IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Commonwealth of Pennsylvania's Rule to Show Cause | : CIVIL NO. 1:13-CV-2103 |
| | : |
| | : (Judge Caputo) |
| filed in | : |
| | : |
| COMMONWEALTH OF PENNSYLVANIA | : |
| | : |
| v. | : |
| | : |
| WILLIAM HOUSMAN | : |

# BRIEF IN SUPPORT
# OF
# COMMONWEALTH'S MOTION TO REMAND

DAVID J. FREED
DISTRICT ATTORNEY
CUMBERLAND COUNTY, PENNSYLVANIA

MATTHEW P. SMITH
CHIEF DEPUTY DISTRICT ATTORNEY
CUMBERLAND COUNTY, PENNSYLVANIA

CUMBERLAND COUNTY COURTHOUSE
CARLISLE, PENNSYLVANIA 17013

PHONE:   (717) 240-6210

# TABLE OF CONTENTS

Page

Introduction ...................................................................................................................1

Statement of Procedural History .................................................................................2

Statement of Facts .........................................................................................................4

Argument: ......................................................................................................................6

      A.  The FCDO is not a "person." ........................................................................6

      B.  The FCDO is not "acting under" a federal officer. ......................................7

      C.  There is no causal nexus. ..............................................................................10

Conclusion ...................................................................................................................11

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**:                                                                                                           Page

*Commonwealth v. Dick*,
No. 13-cv-00561-ARC (M.D. Pa.) ...................................................................................1, 2, 6

*Commonwealth v. Dowling*,
No. 13-cv-00510-ARC (M.D. Pa) ....................................................................................1, 2, 6

*Commonwealth v. Harris*,
No. 13-mc-00062-CMR (E.D. Pa.) ..................................................................................1, 2, 6

*Commonwealth v. Johnson*,
No. 13-cv-2242-BMS (E.D. Pa) .......................................................................................1, 2, 6

*Commonwealth v. Mitchell*,
No. 2:13-cv-01871-MAM (E.D. Pa.) ...............................................................................1, 2, 6

*Commonwealth v. Sepulveda*,
No. 13-cv-00511-ARC (M.D. Pa.) ...................................................................................1, 2, 6

*Feidt v. Owens Corning Fiberglass Corp.*,
153 F.3d 124 (3d Cir. 1998) ............................................................................................1, 6, 10

*Housman v. Pennsylvania*,
131 S.Ct. 199 (Mem)(2010) ..................................................................................................... 2

*Housman v. Wetzel*,
No. 1:CV-11-0167 (E.D. Pa.) ................................................................................................... 1

*Isaacson v. Dow Chem. Co.*,
517 F.3d 129, 136 (2d Cir. 2008) .............................................................................................. 7

*Parlin v. DynCorp Int'l. Inc.*,
579 F. Supp. 2d 629, 635 (D. Del. 2008) ................................................................................ 10

*Scrogin v. Rolls-RoyceCorp.*,
No. 3:10-cv-442 (D.Conn. Aug. 16, 2010) ............................................................................... 2

*Shilling v. Brush*,
2005 WL 2100707 (M.D. Pa. Aug. 26, 2005) .......................................................................... 7

*Watson v. Philip Morris Cos.*,
551 U.S. 142, 147 (2007) ...................................................................................................... 8, 9

**STATE CASES**

*Commonwealth v. Housman*,
604 Pa. 596 (Pa. 2009) ................................................................................................. 2

**FEDERAL STATUTES**

1 U.S.C § 1 ..........................................................................................................................6

18 U.S.C. § 3006A ...................................................................................................6, 9, 10

18 U.S.C. § 3599 .................................................................................................................2

42 U.S.C. § 1983 .................................................................................................................7

28 U.S.C.A. § 2502 ..................................................................................................... *passim*

**STATE STATUTES**

18 Pa. C.S.A. § 2502 ...........................................................................................................2

42 Pa. C.S.A. § 9541 ...........................................................................................................3

**Introduction**

The Commonwealth agrees that there is an ongoing issue concerning whether Federal Community Defender Office (FCDO) attorneys, acting in their capacity as such, can appear in post-conviction proceedings in Pennsylvania Courts antecedent to a properly instituted federal *habeas* petition. Various District Attorneys and the Attorney General of Pennsylvania have tried numerous mechanisms, *Motions to Disqualify, Appoint Counsel,* and *Rules to Show Cause*[1], to address the issue, the gravamen of which is the same – whether the FCDO can represent clients in post-conviction proceedings which are not properly "subsequent stages" of a federal proceeding.

The Supreme Court of the United States, and specifically this Honorable Court, has already answered that question.[2] However, the FCDO, by and through its attorneys, Pepper Hamilton, LLP., and Wilmer Cutler Pickering Hale and Dorr LLP. ("respondent"), attempts to circumvent federal statutes, court rulings, and its own guidelines. In essence, respondent's argument is that although federal statutes, court rulings, and their own guidelines only authorize their *appointment* for indigent defendants in *federal* cases, nothing prohibits their *representation* of indigent defendants in *state* cases. Therefore, acting as attorneys for the FCDO, they are authorized to spend funds to represent defendants in state cases. That aside, however, remand in this case is appropriate because pursuant to the holding of *Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124 (3d Cir. 1998), the FCDO is not a "person" within the meaning of 28

---

[1] *See generally Commonwealth v. Sepulveda*, No. 13-511 (M.D. Pa.)(Caputo, J.); *Commonwealth v. Dowling*, No. 13-510 (M.D. Pa.)(Caputo, J.); *Commonwealth v. Dick*, No. 13-561 (M.D. Pa.)(Caputo, J.); *Commonwealth v. Johnson*, No. 13-2242 (E.D. Pa.)(Shiller, J.); *Commonwealth v. Mitchell*, No. 13-1871 (E.D. Pa.)(McLaughlin, J.); *Commonwealth v. Harris,* No. 13-062 (E.D. Pa.)(Rufe, J.).
[2] *See Housman v. Wetzel*, No. 1:CV-11-0167,  2012 WL 983551 ((E.D. Pa. Mar. 22, 2012), fn. 1 *citing Harbison v. Bell*, 556 U.S. 180, 129 S.Ct. 1481, 1486-89, 173 L.Ed. 347 (2009).

1

U.S.C.A. §1442, is not "acting under" a federal officer, and cannot establish a "causal nexus between the claims and the conduct performed under color of a federal officer."

The Commonwealth, as does the respondent, recognizes this issue has been litigated by this Court and the Eastern District of Pennsylvania resulting in mixed decisions.[3] The Commonwealth asks this Court to rule consistent with its previous rulings and remand and close the case.

## Statement of Procedural History

On November 1, 2001, the defendant in the underlying state case, William Housman, was convicted of Murder in the First Degree for the murder of Leslie White.[4] On November 4, 2001, following the penalty phase of the trial, the jury sentenced the defendant to death. The Trial judge formally imposed the sentence of death on February 1, 2002.

On June 9, 2004, the defendant filed a timely Notice of Appeal to the Supreme Court of Pennsylvania. On December 29, 2009, the Supreme Court of Pennsylvania affirmed the defendant's conviction and sentence. *Commonwealth v. Housman*, 604 Pa. 596 (Pa. 2009). The defendant filed a Writ of Certiorari on June 10, 2010. The United States Supreme Court denied certiorari on October 4, 2010. *Housman v. Pennsylvania*, 131 S.Ct. 199 (Mem)(2010).

The defendant then filed a "Motion For Appointment of Federal Habeas Corpus Counsel Under 18 U.S.C. 3599(a)(2); Stay of Execution, and Leave to Proceed in Forma Pauperis" with the United States District Court for the Middle District of Pennsylvania on January 24, 2011. The defendant's motion was signed by Shawn Nolan, Esquire, and Eric Montroy, Esquire, both from the FCDO for the Eastern District of Pennsylvania.

---

[3] *Supra,* fn. 1. As of this filing, *Harris* and *Mitchel* were decided in favor of the FCDO, and *Dowling, Sepulveda,* and *Dick* were remanded.
[4] 18 Pa.C.S.A. § 2502.

While his federal proceeding was still ongoing, the defendant filed a pro se petition for collateral relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541 et seq., with the trial court on June 17, 2011.  Within this petition, the defendant sought the appointment of counsel for his state collateral relief claims, specifically identifying both Mr. Nolan and Mr. Montroy as the counsel he desired.

However, on June 24, 2011, because the PCRA was a state matter, the trial court appointed Gregory B. Abeln, Esquire to represent the defendant for his post-conviction collateral proceedings.  Mr. Nolan and Mr. Montroy later filed their appearances with the trial court as the defendant's counsel in the state case.  On July 11, 2011, the trial court vacated its previous order appointing Mr. Abeln.  Attorneys did not seek leave to enter their appearance nor did attorney Greg Abeln seek leave to vacate his appointment.

Meanwhile, because the defendant had not exhausted his remedies in the Pennsylvania state courts, the United States District Court for the Middle District closed the case on March 22, 2012.  The District Court also denied the defendant's appointment of his federal counsel to represent him in his state proceedings on the same date.  In Re: Order, March 22, 2012 (Jones, J.).

On May 22, 2013, the defendant, through Mr. Nolan and Mr. Montroy, acting as attorneys for the FCDO, filed a 187 page "First Amended Petition For Writ of Habeas Corpus And For Collateral Relief From Criminal Conviction Pursuant to the Post Conviction Relief Act" with a similarly lengthy appendix.

On July 8, 2013, the Commonwealth filed a Rule to Show Cause on the FCDO to demonstrate to the court's satisfaction how, despite specifically not being appointed, the FCDO

was authorized to represent the defendant in a state proceeding prior to any federal *habeas corpus* proceeding.

On August 7, 2013, utilizing 28 U.S.C.A. §1442, the FCDO, by and through their attorneys, removed the Rule to Show Cause to this Honorable Court.

**Statement of Facts**

The respondent is certainly correct, and this Court has noted before[5], in that under the Criminal Justice Act (CJA):

> … federal district courts must place in operation a plan for furnishing representation to indigent criminal defendants.  A district in which at least two hundred persons annually require the appointment of counsel may establish a "Federal Public Defender Organization," a "Community Defender Organization," or both.
>
> The Criminal Justice Act Plan for the United States District Court for the Middle District of Pennsylvania provides that "the federal public defender organization of the Middle District of Pennsylvania, previously established in this district pursuant to the provisions of the CJA, is hereby recognized as the federal public defender organization for this district." In death penalty proceedings under § 2254 and § 2255, the Middle District Plan permits the appointment of counsel from a number of sources, including the Defender Association of Philadelphia's Capital Habeas Unit, *i.e.*, the FCDO.
>
> The Plan of the United States District Court for the Eastern District of Pennsylvania Pursuant to the Criminal Justice Act of 1964, as amended, designates the FCDO as the Community Defender Organization to "facilitate the representation of persons entitled to appointment of counsel under the Criminal Justice Act."
>
> A "Community Defender Organization" under the Criminal Justice Act is defined as "a nonprofit defense counsel service established and administered by any group authorized by the plan to provide representation." Community Defender Organizations "shall submit to the Judicial Conference of the United States an annual report setting forth its activities and financial position and the anticipated caseload and expenses for the next fiscal year."  Community Defender Organizations may apply for approval from the Judicial Conference to receive an initial grant to establish the organization and in lieu of payments for representation and services under subsections (d) and (e) of § 3006A, Community Defender Organizations may "receive periodic sustaining grants to provide

---

[5] *Supra*, fn. 1, *Dick*, Dkt. No. 34 at 12 – 15 (internal quotations and citations omitted).

representation and other expenses pursuant to this section." The Judicial Conference is also tasked with issuing rules and regulations for governance of plans established under § 3006A. Appropriations under the Criminal Justice Act "shall be made under the supervision of the Director of the Administrative Office of the United States Courts."

The AO, acting under the supervision and direction of the Judicial Conference, administers the federal defender and attorney program on a national basis; is responsible for training related to furnishing representation under the CJA; and provides legal, policy, management, and fiscal advice to the Conference and its . . . defenders and their staffs."

Community Defender Organizations seeking grant funds must apply on a form prepared by the AO. The receipt and use of funds is subject to certain conditions, and Community Defender Organizations must agree to and accept these conditions before grant payments are issued. Among others, the terms and conditions include that: "grant funds will be maintained separately and will not be commingled with any non-grant funds maintained by grantee;" "the grantee must submit reports each year setting forth its activities and financial position and the anticipated caseload and expense for the next fiscal year;" and "the grantee must keep financial books . . . unless a wavier is granted by the AO [and] such records must be maintained and submitted in such manner and form as required by the AO."

If a grantee fails to comply with the terms and conditions of its grant award, the Judicial Conference or its authorized representative "may reduce, suspend, or terminate, or disallow payments under th[e] grant award as it deems appropriate."

However, the respondent provides no affirmative support or citation to the assertions of 'fact' that the "FCDO's activities are supported by a combination of federal funds and private contributions"; "FCDO lawyers volunteer their time to appear pro bono on behalf of clients in state courts"; and "the AO is aware of and has approved this practice." (Dkt No. 8 at 9). The only document the respondent provided in that regard was the *model* Grant and Conditions[6], not the *actual* signed Grant and Conditions the Defender Association of Philadelphia is required to provide annually to the AO, nor the annual reports as required by clauses 6, 7, 8, 9, 13, 14 and/or 15 of same. Such documents would, in fact, reveal whether state proceedings, travel to and from, preparation of 187 page state PCRA petition and appendix, the retaining of Pepper

---

[6] *See* Dkt. No. 8-6.

5

Hamilton, LLP. and Wilmer Cutler Pickering Hale and Dorr LLP., and subsequent removal action were budgeted or *pro bono*. Hence, the Commonwealth's so called 'campaign'[7].

## Argument

**The FCDO, by and through their attorneys, cannot show the FCDO is a "person" within the meaning of 28 U.S.C.A. §1442, is "acting under" a federal officer and it cannot establish a "causal nexus between the claims and the conduct performed under color of a federal office."**

As this Court has stated in *Dowling, Sepulveda, and Dick*[8], under *Feidt*, 153 F.3d at 127 (internal citation and quotations omitted), the FCDO must establish that:

> (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense ; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

### A. The FCDO is not a "person."

To establish jurisdiction pursuant to § 1442(a)(1), FCDO first must establish that it is a "person" for federal removal purposes. *Feidt*., 153 F.3d at 127. Title 1, U.S.C. § 1 provides: "In determining the meaning of any Act of Congress, unless the context indicates otherwise .... the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals[.]" 1 U.S.C. § 1. Corporate entities generally qualify as a person under § 1442(a)(1). *Dick*, 2013 WL at *5 (collecting cases). A federal community defender organization is a "nonprofit defense counsel service established and administered by any group authorized by the plan [for the respective district] to provide representation." 18 U.S.C. § 3006A(g)(2)(B).

Here, FCDO has failed to establish that it is a "person" for removal purposes. The Commonwealth's state court motion concerned FCDO's representation of Housman in state

---

[7] *See* Dkt. No. 8 at 7.
[8] *Supra*, fn. 1.

court.  The FCDO is the removing party.  (Dkt No. 1 at 1).  FCDO is not a "person," or corporation, but a division or unit of the Defender Association of Philadelphia.  (Dkt. No. 1 at n.1).  Accordingly, FCDO has essentially conceded that this Court designated the Defender Association as the "*group*" to establish FCDO as a defense counsel "*service*."  As a defense counsel service that constitutes a division or unit of a non-profit entity, the Defender Association, FCDO does not meet the requirement of being a person itself under § 1442(a)(1).  In civil actions pursuant to 42 U.S.C. § 1983, subunits of government entities are not considered "persons" and therefore cannot be sued.  *E.g.*, *Shilling v. Brush*, 2005 WL 2100707, at *3 (M.D. Pa. Aug. 26, 2005).  In *Brush*, a borough's police department could not be sued pursuant to § 1983 because it was not a person pursuant to § 1983.  *Id*.  If the police department of an undisputed government entity, a borough, is not a person for § 1983 purposes, FCDO as a unit or division of a non-profit entity that provides a service for select group of individuals, is likewise not a "person."  Consequently, FCDO has not established this Court's jurisdiction and the Commonwealth respectfully requests that this Court grant the Commonwealth's instant motion to reconsider and remand this case to state court

### B.  The FCDO is not "acting under" a federal officer.

To remove the Commonwealth's Request under the federal officer removal statute, the FCDO must show that it was "acting under" a federal officer. *See Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008). "The words 'acting under' are broad, and . . . the statute must be 'liberally construed.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007) (citing *Colorado v. Symes*, 286 U.S. 510, 517, 52 S.Ct. 635, 76 L. Ed. 2d 1253 (1932)). "There is no precise standard for the requisite control to bring an entity within the 'acting under' clause, but the determination is dependent upon the facts and conduct giving

rise to the alleged cause of action." *Scrogin v. Rolls-RoyceCorp.*, No. 3:10cv442, 2010 WL 3547706, at *4 (D. Conn. Aug. 16, 2010) (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 125 (2d Cir. 2007)). But the Supreme Court has stated to satisfy the "acting under" requirement of § 1442(a)(1), a private person's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152, 127 S.Ct. 2301.

In *Watson*, The Supreme Court granted certiorari to address the question "whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the italicized language ("*acting under*" an "*officer*" of the United States) and thereby permits removal." *Id*. at 145, 127 S. Ct. 2301 (emphasis in original). While recognizing the words "acting under" are broad, the Court emphasized that "broad language is not limitless." *Id*. at 148, 127 S. Ct. 2301. The *Watson* Court analyzed the phrase "acting under" as used in § 1442(a)(1), and found use of the word "under" "refer[red] to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'" *Id*. at 151, 127 S. Ct. 2301 Such a relationship often involves subjection, guidance, or control. *See id*. (citing Webster's New International Dictionary 2765 (2d ed. 1953)). The Court emphasized that mere compliance (or noncompliance) with federal laws, rules and regulations does not bring a private actor within the scope of the federal officer removal statute even if "the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id*. at 152-53, 127 S. Ct. 2301.

In the Notice of Removal, the FCDO asserts that it assists the Government in that "if the FCDO did not provide the services in question, the federal government would have to provide the services with its own employees as it does in many federal judicial districts." (Dkt. No. 1 at

8-9). Essentially, the FCDO argues that as a federal grantee/contractor pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, it "act[s] under" the AO[9]. However, no federal agency, to include the AO, is obligated to appear in state court prior to federal *habeas corpus*[10]. The FCDO also claims that pursuant to the CJA it is subject to intense regulation and monitoring by the AO, but this argument is similar to the position advanced by the Philip Morris Companies and rejected by the Supreme Court in *Watson*. As the Supreme Court noted, intense regulation alone is insufficient to turn a private contractor into a private firm "acting under" a federal officer or agency. *See Watson*, 551 U.S. at 153, 127 S. Ct. 2301 ("a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone."). The *Watson* Court noted a crucial distinction between cases where a contractor and the Government are in an unusually close relationship "involving detailed regulation, monitoring, and supervision," and those instances where a company is simply subject to "intense regulation." *Id*. And being subject to intense regulation alone does not entitle a private entity to remove an action under § 1442(a)(1). *See Watson*, 551 U.S. at 153.

Lastly, if one were to accept the FCDO's reasoning in that pursuant to the CJA, it "acts under" the supervision of a federal officer thereby permitting removal, by extension, one would have to permit the removal of appointed CJA panel attorneys and appointed state attorneys because they too are "acting under" a federal officer. In sum, the FCDO does not show it is "acting under" a federal officer and removal is inappropriate.

---

[9] Except clause to the 'model' Grant and Conditions says its not: "**GRANTEE STATES:** Neither the grantee nor any of its employees are officers, employees, or agents of the United States. The United States is in no way obligated under leases, contracts, or other agreements entered into by the grantee." *See* Dkt. No. 8-6, at 5.
[10] A federal court does have discretion to appoint the FCDO prior to *habeas*, but federal courts are not obligated to make such appointments.

## C. There is a no causal nexus.

Under *Feidt*, the FCDO must show, "there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt,* 153 F.3d at 127. This inquiry is distinct from the "acting under" requirement under the federal officer removal statute. *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 635 (D. Del. 2008). Some courts have noted that these considerations "tend to collapse into a single requirement." *Id.* (internal quotations and citations omitted). Under this requirement however, removal will not be proper where the acts complained of were performed under the 'general auspices' of a federal officer. *Id.* at 636.

The FCDO is in somewhat of a *Catch-22*. On one hand it asserts:

> The FCDO's activities are supported by a combination of federal funds under the Criminal Justice Act (CJA), 28 U.S.C. § 3006A, and private charitable contributions. In addition to their funded activities, FCDO lawyers volunteer their time to appear pro bono on behalf of clients in state court. The AO is aware of and has approved this practice.

(Dkt. No. 8 at 9). Although not specifically stating so or providing evidence of same, the FCDO intimates it is not using federal funds and is acting *independently* of its federal grant[11]. If so, there can be no causal connection between its federal mandate and its pre *habeas* state activities. On the other hand, the FCDO asserts in a footnote:

> Because research and investigation of federal claims are essential to the federal habeas representation, those activities may, under certain circumstances, be compensated with federal CJA funds even if conducted before the filing of a federal habeas petition and contemporaneous with PCRA proceedings….

(*See* fn. 4, Dkt. No. 8 at 10). Here the FCDO intimates it is using federal funds, though again, the FCDO asserts no authority for that proposition or provides evidence of same. Further, the footnote does not state the FCDO is the entity filing contemporaneous PCRA or is authorized to

---

[11] This seems to run counter to both Clause 20 of the Model Grant and Conditions which prohibits the Outside Practice of Law and Canon 5(D) of the Model Code of Conduct for Federal Community Defenders which the CDO is required to adopt and which prohibits same.

do so, merely that "those activities may… be compensated… contemporaneous with PCRA proceedings." The second half of the footnote then states:

> FCDO activity that would not need to be taken to provide federal habeas representation, such as appearing at state court hearings, is underwritten by private funds or is uncompensated, *i.e.*, donated by FCDO lawyers on their own time.

(*See* fn. 4, Dkt. No. 8 at 10). Presumably, what the FCDO meant to say is that FCDO lawyers can file a clearly premature federal *habeas* and stay of execution action in federal court, get appointed for said action, research both federal *habeas* and state claims, have their *habeas* action dismissed as premature and their appointment vacated, then file a 187 page PCRA petition with attendant appendices in state court with only the physical act of filing the petition and appearing in state court needing to be underwritten by 'private funds'[12]. However, since the physical act of filing and prosecuting the state action is still pro bono, or private, or 'independent' of the grant, there is no causal connection. Hence, in order to operate in state court, the FCDO must claim independence or pro bono status, but to have the state action removed to federal court, it must claim it is "acting under" a federal officer. However, if it is "acting under" a federal officer, it is doing so under the auspices of the grant. The FCDO attempts to remedy this circular reasoning with generalities, but fails to satisfy their burden. Remand is therefore appropriate.

## Conclusion

The Commonwealth recognizes that the propriety of the FCDO's actions is not before this court. The Commonwealth also recognizes and acknowledges the FCDO provides a vital service to indigent capital defendants in federal *habeas* proceedings. However, the question of whether FCDO attorneys acting in their capacities as "members of the Bar of Pennsylvania in good standing" are authorized to appear in and prosecute state PCRA proceedings is for the

---

[12] One also assumes the retaining of Pepper Hamilton, LLP., and Wilmer Cutler Pickering Hale and Dorr LLP is either underwritten with private funds, donated by the firms, or included in the grant.

11

courts of the Commonwealth of Pennsylvania to address.  Removal in this instance is not appropriate.  Therefore, we ask this Honorable Court to remand and close the case.

                              Respectfully Submitted,

Dated: September 17, 2013        /s/ Matthew P. Smith
                                         Chief Deputy District Attorney
                                         Pa. Bar No. 89552

OFFICE OF THE DISTRICT ATTORNEY
CUMBERLAND COUNTY
ONE COURTHOUSE SQUARE, RM 202
CARLISLE, PENNSYLVANIA 17013
PHONE:   (717) 240-6210

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Commonwealth of Pennsylvania's Rule to Show Cause | : : : | CIVIL NO. 1:13-CV-2103 (Judge Caputo) |
| filed in | : : | |
| **COMMONWEALTH OF PENNSYLVANIA** | : : | |
| v. | : : | |
| **WILLIAM HOUSMAN** | : | |

## CERTIFICATE OF SERVICE

      I hereby certify that I am this day serving the foregoing brief upon the persons below via the ECF filing system:

Shawn Nolan, Esquire
Federal Defender Office
Capital Habeas Corpus Unit
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Thomas B. Schmidt III, Esquire
Pepper Hamilton LLP
3000 Two Logan Sq.
18th & Arch Street
Philadelphia, PA 19103
(215) 981-4000


BY:
/s/ Matthew P. Smith
Chief Deputy District Attorney
Pa. Bar No. 89552


OFFICE OF THE DISTRICT ATTORNEY
CUMBERLAND COUNTY
ONE COURTHOUSE SQUARE, RM 202
CARLISLE, PENNSYLVANIA 17013
PHONE:  (717) 240-6210

**CERTIFICATE OF COMPLIANCE WITH LR 7.8(b)(2)**

      In compliance with this Court's Local Rule 7.8(b)(2), I hereby certify that the foregoing brief complies with the word-count limitation. By relying on the word count feature of the word processing system used to prepare the foregoing brief, I have determined that the brief contains 4,430 words to include everything and the brief itself is less than 15 pages.

Dated: September 17, 2013.

                                  SIGNED:
                                  /s/ Matthew P. Smith
                                  Chief Deputy District Attorney
                                  Pa. Bar No. 89552

OFFICE OF THE DISTRICT ATTORNEY
CUMBERLAND COUNTY
ONE COURTHOUSE SQUARE, RM 202
CARLISLE, PENNSYLVANIA 17013
PHONE: (717) 240-6210